UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

| Present: The Honorable | Audrey B. Collins, Chief Judge | | |
|---|---|---|---|
| Angela Bridges | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **DENIAL OF MOTION TO DISMISS** (In Chambers)

### I.   INTRODUCTION

In 1998, Plaintiff Zobmondo Entertainment LLC "introduced the first board game based on the traditional conversational game known as 'would you rather.'" (Complaint (Docket No. 1) ¶ 1.)  Defendant Imagination International Corporation recently debuted its own "would you rather" board game titled "Justin & David's Original Would You Rather. . . ? Board Game."  (Complaint ¶ 1.)  Zobmondo then brought this suit against Imagination, alleging that Imagination's use of "Original" "falsely and deceptively conveys to consumers that its game is the first, and original, board game based on the 'would you rather concept'" and "falsely convey[s] that Zobmondo's 'Would You Rather. . . ?' board games are not the originals."[1]  (Complaint ¶ 1; see also Complaint ¶¶ 14, 18.)

Zobmondo's sole cause of action is for "False Advertising In Violation of 15 U.S.C. [§] 1125(a)."  (Complaint at 5.)  That section, also known as § 43(A) of the Lanham Act, prohibits any "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which" causes confusion "as to the origin, sponsorship, or approval" of the goods in question, or which "misrepresents the nature, characteristics, qualities, or geographic origin" of the goods in question.  15 U.S.C. § 1125(a)(1)(A) and (B).

The Court has before it a motion to dismiss brought by

---

[1] This case is related to Zobmondo Entertainment LLC v. Falls Media LLC, CV 06-03459 which has an extensive history before this Court.  Imagination purchased the assets of Falls Media, which was originally owned by David Gromberg and Justin Heimberg, additional defendants in the predecessor case. (Complaint ¶¶ 12, 13; Mem. (Docket No. 18) at 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

Imagination.[2]  (Docket Nos. 18-19.)  Imagination argues that Zobmondo's claim is premised on an allegedly improper identification of the persons or entities that originated the ideas contained in the game.  This, Imagination argues, is not a proper "origin of goods" claim under Dastar Corp. v. Twentieth Century Fox Film Corp., 539 US 23 (2003).  Zobmondo argues that it is not bringing an "origin of goods" claim, but instead brings a claim for "misrepresent[ing] the nature, characteristics, [and] qualities" of Imagination's game.  Dastar, it argues, does not apply.

For the reasons discussed below--namely because the Complaint concerns priority of manufacture, not creative genesis--the Court finds that Dastar does not preclude Zobmondo's claim.  The motion to dismiss is **DENIED**.

## II.  DASTAR AND THE LANHAM ACT

In Dastar, the defendant in the underlying action, Dastar, had used public domain footage from the television series Crusade in a set of videos called Campaigns that were released under Dastar's name with Dastar listed as the producer.  Dastar, 539 U.S. at 25-27.  Plaintiffs in the underlying action, Twentieth Century Fox Film Corporation, SFM Entertainment and New Line Home Video, Inc., who were all involved in or related to the Crusade series, brought suit against Dastar under § 1125(a).  Dastar, 539 U.S. at 27.

Section 1125(a) provides in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any **false designation of origin**, **false or misleading description of fact, or false or misleading representation of fact**, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or **as to the origin**,

---

[2]Rule 12(b)(6) allows a party to attack a complaint by arguing that the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Under Rule 12(b)(6), the Court accepts all factual allegations pleaded in the complaint as true; in addition, it construes those facts and draws all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

>     sponsorship, or approval of his or her goods, services, or
>     commercial activities by another person, or
>
>     (B) in commercial advertising or promotion, misrepresents
>     the **nature, characteristics, qualities**, or geographic origin
>     of his or her or another person's goods, services, or
>     commercial activities,
>
> shall be liable in a civil action by any person who believes that
> he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added). Thus, a claim under subsection (a)(1)(A) goes to confusion regarding "origin, sponsorship, or approval," and a claim under subsection (a)(1)(B) goes to misrepresentation of the "nature, characteristics, qualities, or geographic origin."

   The gravamen of the claim against Dastar was "that, in marketing and selling Campaigns as its own product without acknowledging its nearly wholesale reliance on the Crusade television series, Dastar ha[d] made a 'false designation of origin, false or misleading description of fact, or false or misleading representation of fact, **which ... is likely to cause confusion ... as to the origin ... of his or her goods**.'" Dastar, 539 U.S. at 31 (emphasis added). The Supreme Court found that such a claim was not proper.

   The Supreme Court held that: "the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." Dastar, 539 U.S. at 32. The Supreme Court concluded: "reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Dastar, 539 U.S. at 37 (italics in original).

   In reaching its conclusion, the Supreme Court was guided--and constrained--in large part by the principles underlying copyright protection. The Court noted that allowing a § 1125(a) claim for originating a creative work "would create a species of mutant copyright law that limits the public's 'federal right to "copy and to use"' expired copyrights." Dastar, 539 U.S. at 34. The Court then expounded on the difficulties of applying "origin" to a work not protected by copyright, such as the public domain material at issue in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

Dastar:

> Reading "origin" in § 43(a) to require attribution of uncopyrighted materials would pose serious practical problems. Without a copyrighted work as the basepoint, the word "origin" has no discernable limits.  A video of the MGM film Carmen Jones, after its copyright has expired, would presumably require attribution not just to MGM, but to Oscar Hammerstein II (who wrote the musical on which the film was based), to Georges Bizet (who wrote the opera on which the musical was based), and to Prosper Merimee (who wrote the novel on which the opera was based).  In many cases, figuring out who is in the line of "origin" would be no simple task.  Indeed, in the present case it is far from clear that respondents[, plaintiffs in the underlying action,] have that status.  Neither [plaintiffs] SFM nor New Line had anything to do with the production of the Crusade television series-they merely were licensed to distribute the video version. While [plaintiff] Fox might have a claim to being in the line of origin,  its involvement with the creation of the television series was limited at best.  Time, Inc., was the principal, if not the exclusive, creator, albeit under arrangement with Fox. And of course it was neither Fox nor Time, Inc., that shot the film used in the Crusade television series.  Rather, that footage came from the United States Army, Navy, and Coast Guard, the British Ministry of Information and War Office, the National Film Board of Canada, and unidentified "Newsreel Pool Cameramen." If anyone has a claim to being the original creator of the material used in both the Crusade television series and the Campaigns videotapes, it would be those groups, rather than Fox. We do not think the Lanham Act requires this search for the source of the Nile and all its tributaries.

Dastar, 593 U.S. at 35-36.

Accordingly, a claim would not lie against the company for "misrepresenting" that it was the creator/author of the footage by labeling itself as the producer.  However, although not at issue in Dastar, the Supreme Court noted that inability to bring an "origins of goods" claim did not foreclose all potential relief under 15 U.S.C. § 1125(a):

> If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action- not for reverse passing off under the "confusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

as to the origin" provision of § 43(a)(1)(A), but for misrepresentation under the "misrepresents the nature, characteristics [or] qualities" provision of § 43(a)(1)(B).

Dastar, 539 U.S. at 38.

As discussed below, although Dastar precludes an origin of goods claim regarding misrepresentation of authorship, it does not preclude Zobmondo's claim regarding who had the first "would you rather" board game.

### III.  ANALYSIS

**A.  DASTAR DOES NOT PRECLUDE ZOBMONDO'S CLAIM**

Imagination's game is titled: "Justin & Dave's Original Would You Rather. . . ? Board Game."  (Complaint ¶ 1.)  The definition of original includes: "Belonging to the beginning or earliest stage of something; existing at or from the first; earliest, first in time." Oxford English Dictionary (draft revision June 2009).  Zobmondo argues that the impropriety with Imagination's use of "original" is that it conveys that its game was "earliest, first in time," when in fact it was not.  (See Complaint ¶ 1.)[3]

Imagination argues the claim is over "who is responsible for originating 'the "would you rather" **concept**' in a board game."  (Mem. at 1-2 (emphasis added).)  Imagination would focus on origination of the concept, i.e., who was the first to come up with the idea for the game.  Imagination is incorrect.  Although the Complaint is not always exact in its terminology, it focuses on who was the first to make a "would you rather" board game:

> Imagination's branding of its game as the "Original Would You Rather ...? Board Game" falsely and deceptively conveys to consumers that its game is the first, and original, board game based on the "would you rather" concept.

(Complaint ¶ 1.)  Despite Imagination's arguments to the contrary, even it construes the relevant issue to be first to manufacture, not first to come up with an idea.  (Mem. at 1 ("Zobmondo argues that. . .

---

[3]At this stage the Court takes no position as to whether Imagination's title conveys--one way or the other--that it is the first "would you rather" board game.  For purposes of the present motion, what matters is that Zobmondo has pled that the title conveys that the game is the first "would you rather" board game.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

Imagination is misleading consumers into believing that Heimberg and Gomberg were the first people ever **to make** a board game "based on the 'would you rather' concept". . . .") (emphasis added).)

    Accordingly, Dastar is not directly on-point. Dastar does not prohibit a claim for an alleged misrepresentation as to the production of the physical good. Indeed, Dastar limited "origin of goods" to "the producer of the tangible product sold in the marketplace." Dastar, 539 U.S. at 31. Moreover, although Dastar discussed § 1125(a) generally, the issue before the Supreme Court was the proper construction of subsection (a)(1)(A.) Dastar, 539 U.S. at 31 ("At bottom, we must decide what § 43(a)(1)(A) of the Lanham Act means by the 'origin' of 'goods.'").

    Unlike the claim at issue in Dastar, Zobmondo's claim is based on subsection (a)(1)(B). Even though the Complaint does not explicitly state which subsection is at issue--the Complaint only cites the overarching subsection (a)--Zobmondo takes the position in its briefing that the claim is only under subsection (a)(1)(B). (Opp. (Docket No. 21) at 6 (Zobmondo arguing that it has properly pled a § 1125(a)(1)(B) claim); id. at 17 ("This is **not** a claim of false designation of authorship.") (emphasis in original).) The Court will hold it to that position.

    Subsection (a)(1)(B) concerns representations about "the nature, characteristics, qualities, or geographic origin" of the good at issue. The Ninth Circuit recently addressed "nature, characteristics, [and] qualities" under subsection (a)(1)(B) in Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008).

    Sybersound involved competitors in the karaoke machine industry. Plaintiff Sybersound brought a claim under subsection (a)(1)(B) alleging that the defendants misrepresented the "nature, characteristics, [and] qualities" of defendants' records because defendants falsely claimed to have obtained the proper licensing for the copyrighted music used on their records. Sybersound, 517 F.3d at 1143. In essence, Sybersound's claim was premised on the assertion that defendants did not have the copyrights--or rights to the copyrights--for the works used in the defendants' records.

    The Ninth Circuit found that Sybersound's claim involved an impermissible "tension between the Lanham Act's goal of preventing unfair competition and the Copyright Act's goal of providing a statutory scheme granting rights only to copyright owners." See Sybersound, 517 F.3d at 1143. Relying on Dastar, the Ninth Circuit would not construe the licensed--or unlicensed--status of a good as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

part of the "nature, characteristic[], [or] qualit[y]" of the good. Sybersound, 517 F.3d at 1144. The Ninth Circuit found that "[c]onstruing the Lanham Act to cover misrepresentations about copyright licensing status as Sybersound urges would allow competitors engaged in the distribution of copyrightable materials to litigate the underlying copyright infringement when they have no standing to do so because they are nonexclusive licensees or third party strangers under copyright law." Sybersound, 517 F.3d at 1144.

Here, there is no conflation with copyright (or patent) law inherent in Zobmondo's claim. The issue for determination is whether Imagination's title inappropriately conveys that the game is the first "would you rather" board game. This relies, in part, on determining the alleged falsity of the premise, i.e., that Imagination's game is not the first "would you rather" board game. Making this determination requires no examination as to who came up with the idea for the board game, or who may have any copyrights in the game. The only question is who physically manufactured the first such board game.[4]

---

[4] The Court does not find that Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300 (Fed. Cir. 2009), relied on by Imagination, provides much guidance. In Baden, the Federal Circuit examined the Ninth Circuit's Sybersound decision. In Sybersound the Ninth Circuit stated that "the nature, characteristics, and qualities of karaoke recordings under the Lanham Act are more properly construed to mean characteristics of the good itself, such as the original song and artist of the karaoke recording, and the quality of its audio and visual effects." Sybersound, 517 F.3d at 1144. Relying on this language, the Federal Circuit found that in the Ninth Circuit a claim under "Section 43(a)(1)(B) must refer to 'the characteristics of the good itself.'" Baden, 556 F.3d at 1307 (quoting Sybersound). What constitutes a "characteristic of a good," however, is not necessarily easy to pin down. The Federal Circuit ultimately found that "to allow Baden to proceed with a false advertising claim that is fundamentally about the origin of an idea, is contrary to the Ninth Circuit's interpretation of Dastar." Baden, 556 F.3d at 1308. The Federal Circuit seemed to limit "characteristics of a good" to "physical or functional attributes." Baden, 556 F.3d at 1307. However, this is somewhat hard to comport with the Ninth Circuit's Sybersound language that "characteristics of the good itself" include "the original song and artist of the karaoke recording." Sybersound, 517 F.3d at 1144. "Artist" and "original song" for a recording would seem to involve nonphysical and nonfunctional aspects of the good, if not the origin of an idea. Setting aside the questionable reading of Sybersound, Baden is not helpful because the claim there involved an idea and authorship. See Baden, 556 F.3d at 1308 (limiting issue on appeal to "false attribution of the authorship" ). This is not so for the claim here--it involves a determination as to the first to manufacture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | Zobmondo Entertainment LLC v. Imagination Int'l Corp. | | |

Accordingly, Zobmondo can proceed with its claim that Imagination is misrepresenting that its board game was the first "would you rather" board game. Likewise, Zobmondo can proceed with the claim that the use of "original" improperly conveys that its own game was not the first "would you rather" board game. Section 1125(a)(1)(B) covers misrepresentations as to Imagination's own goods as well as "another person's goods."

As should be obvious from the discussion above, the claims are limited to the allegation that Imagination's title is misrepresenting whether Zobmondo was the first to manufacture--not come up with the idea for--a "would you rather" board game.[5]

**B.   IMAGINATION'S ALLEGED USE OF "ORIGINAL" IS NOT PUFFING**

In addition to challenging the propriety of the § 1125 claim under Dastar, Imagination also argues that use of "original" is unactionable "puffery." (Mem. at 2.) The Court does not agree.

Puffing involves claims that are "either vague or highly subjective." Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990) (citation and internal quotation marks omitted). "'[P]uffery' that does not qualify as a statement of fact capable of being proved false" is not actionable. Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999). To the contrary, statements that misrepresent "specific or absolute characteristics of a product are actionable." Cook, 911 F.2d at 246 (citation and internal quotation marks omitted).

Here the claim is that Imagination's use of "original" inaccurately conveys that Imaginations' game was the first "would you rather" board game. This is a specific fact that is not subjective--Imagination's game was either the first, or it was not. Accordingly, use of "original" as alleged by Zobmondo is not puffery.

However, Imagination is free to continue to rely on the puffing defense. The Court is only finding that "original," with the meaning

---

[5]To the extent the Complaint could be read as involving a misrepresentation of authorship, or the "'misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright" Dastar, 539 U.S. at 34 (citation omitted), Zobmondo will not be allowed to proceed. (See Complaint ¶ 18 (alleging that Imagination's title conveys that "Zobmondo's 'Would You Rather ...?' board games are **imitations** of Imagination's game") (emphasis added).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02235 ABC (PLAx) | Date | June 23, 2009 |
|---|---|---|---|
| Title | <u>Zobmondo Entertainment LLC v. Imagination Int'l Corp.</u> | | |

used in the Complaint, does not amount to puffery. If the evidence shows that no one would ascribe that particular meaning to "original" as used by Imagination, puffing may be a viable defense. <u>See e.g.</u>, <u>Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.</u>, 292 F.Supp. 2d 535, 553 (S.D.N.Y. 2003) ("The claim that Shi Dings [pants] are Abercrombie's 'Most Original' pants is obvious puffery and therefore not actionable. There is no way to prove that one pair of Abercrombie pants is more or less 'original' than another pair of Abercrombie pants.").

### IV.   CONCLUSION

Imagination's motion hinges on how one construes "original." If "original" relates to authorship, the Court's ruling would likely be different. However, Zobmondo, as the master of its complaint, centered its claim on the alleged tendency of "original" "to deceive the relevant consuming public into believing that Imagination's game is the first board game based on the 'would you rather' concept." (Complaint ¶ 18.) To the extent that Zobmondo's claim relates to who was the first to manufacture a "would you rather" board game, it may proceed.

Accordingly, the motion to dismiss is **DENIED**. The Court will not hear argument on the motion at the June 29, 2009 hearing. Fed. R. Civ. P. 78; L.R. 7-15. However, because that is the date for the scheduling conference, the parties must still appear for the June 29, 2009 hearing.[6]

IT IS SO ORDERED.

| | : |
|---|---|
| Initials of Preparer | AB |

---

[6] Although Zobmondo filed the Rule 26(f) report, the Court did not receive the mandatory chambers paper copies. Pursuant to G.O. 08-02, parties must supply chambers with **two copies of all filed documents by noon the day after the documents are filed.** <u>See</u> G.O. 08-02(IV)(D), as amended by G.O. 08-11. **THE PARTIES ARE HEREBY ADVISED THAT FAILURE TO ADHERE TO THIS REQUIREMENT MAY DELAY THIS MATTER AND MAY RESULT IN SANCTIONS.**